[Cite as *Lingenfelter v. Lingenfelter*, 2015-Ohio-4002.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

JASON LINGENFELTER

    Appellee

    v.

NICHOLE LINGENFELTER

    Appellant

C.A. No.     14AP0005

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     12-DR-0288

DECISION AND JOURNAL ENTRY

Dated: September 30, 2015

MOORE, Judge.

{¶1} Defendant-Appellant Nichole Sorenson, formerly known as Nichole Lingenfelter ("Wife"), appeals from the judgment of the Wayne County Court of Common Pleas. We reverse.

I.

{¶2} Wife and Jason Lingenfelter ("Husband") were married on April 15, 2000. Two children were born of the marriage, K.L. and S.L. On June 27, 2012, Husband filed for divorce. The parties entered into stipulations with respect to many issues, but were unable to reach an agreement concerning several areas, including the amount of equity in the marital home, how to allocate the parties' debts, the precise details of the shared parenting plan, and spousal support.

{¶3} The matter proceeded to a hearing before a magistrate over the course of two days: July 30, 2013, and October 10, 2013. At the end of the first day of the hearing, the magistrate met with the attorneys. Their discussion was recorded. Toward the end of the

discussion, the magistrate interjected: "I know [Husband's] mom and dad by the way just so you know that. I know Dave and Alice Lingenfelter. I've known them for 35 years. In fact * * * my [former] secretary is the niece of Alice." Shortly thereafter, one of the attorneys alerted the magistrate to the fact that they were still on the record and being recorded. Almost immediately, the transcribed testimony ended.

{¶4} No motion to disqualify was filed between the first day and second day of the hearing or in the two weeks pending issuance of the decision. The magistrate issued a decision October 25, 2013. While not necessarily indicative of bias, in his decision, the magistrate did find on more than one occasion that Husband's testimony was more credible than Wife's on issues of fact. Additionally, the magistrate seemed extremely bothered by Wife's testimony regarding her job search and expressed his belief that she was not adequately pursuing employment. For the most part, the magistrate's decision was favorable to Husband's position. The trial court entered judgment that same day adopting the magistrate's recommendations.

{¶5} At some point thereafter, Wife retained new counsel. Wife's new counsel filed objections to the magistrate's decision, while at the same time requesting an extension of time to file a memorandum in support of the objections and possibly amended objections once counsel was in possession of the hearing transcript.

{¶6} The issue of the magistrate's conflict of interest was not raised until January 8, 2014, when Wife's new counsel filed a memorandum in support of objections and a motion to disqualify the magistrate. Both filings alleged that the magistrate had a conflict of interest. The trial court overruled Wife's objections and denied her motion to disqualify the magistrate. The trial court concluded that, "[t]he fact that [the magistrate] knows [Husband's] parents does not disqualify him without something more. Judges and magistrates often know people related to

litigants. There is nothing in the record to show that this had any bearing on the decision. In any event, the issue should have been raised long ago."

{¶7} Wife has appealed, raising four assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN THE TRIAL COURT OVERRULED [WIFE'S] MOTION TO DISQUALIFY THE MAGISTRATE.

{¶8} Wife asserts in her first assignment of error that the trial court abused its discretion in denying Wife's motion to disqualify the magistrate. Based upon the unique circumstances of this case, we agree that the trial court abused its discretion in denying Wife's motion without having a hearing on her motion.

{¶9} "An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law." Preamble of the Code of Judicial Conduct. With respect to judicial disqualification, the Supreme Court of Ohio has stated that "'[p]reservation of public confidence in the integrity of the judicial system is vitally important,' and '[a]n appearance of bias can be just as damaging to public confidence as actual bias.'" *In re Disqualification of Burge,* 138 Ohio St.3d 1271, 2014-Ohio-1458, ¶ 9, quoting *In re Disqualification of Murphy,* 110 Ohio St.3d 1206, 2005-Ohio-7148, ¶ 6. Thus, the Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's *impartiality* might reasonably be questioned[.]" Jud.Cond.R. 2.11(A).

Magistrates are judges within the meaning of the Judicial Code of Conduct. *See* Application of the Code of Judicial Conduct. The comments to the rule advise that, "[a] judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification." *See* Jud.Cond.R. 2.11, Comment 5.

{¶10} While the review of alleged judicial misconduct is outside the jurisdiction of this Court, *Hendy v. Wright*, 9th Dist. Summit No. 26422, 2013-Ohio-5786, ¶ 7, this Court can review properly raised challenges to a magistrate's impartiality. *See J.B. v. Harford,* 9th Dist. Summit No. 27231, 2015-Ohio-13, ¶ 36. The proper method to challenge a magistrate's impartiality is to file a motion for disqualification with the trial court. *See id*. Civ.R. 53(D)(6) specifically provides that, "[d]isqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court." A trial court abuses its discretion if its decision is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶11} In the context of judicial disqualification, the Supreme Court of Ohio has held that "[t]he proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Farmer,* 139 Ohio St.3d 1202, 2014-Ohio-2046, ¶ 7.

{¶12} Here, Wife's new counsel did file a motion to disqualify the magistrate which the trial court summarily denied stating: "The fact that [the magistrate] knows [Husband's] parents does not disqualify him without something more. Judges and magistrates often know people related to litigants. There is nothing in the record to show that this had any bearing on the

decision. In any event, the issue should have been raised long ago." In light of the record before us, we are troubled by the trial court's decision which appears not to have fully considered the appearance of bias to a reasonable and objective observer as well as the factual circumstances which may have necessitated the delay in filing the motion to disqualify.

{¶13} As noted above, at the end of the first day of the hearing, the magistrate asked only the attorneys to stay in the courtroom and proceeded to engage them in a discussion that was recorded. Towards the end of that discussion, the magistrate interjected: "I know [Husband's] mom and dad by the way just so you know that. I know Dave and Alice Lingenfelter. I've known them for 35 years. In fact * * * my [former] secretary is the niece of Alice." Shortly thereafter, the recording abruptly ended after one of the attorneys alerted the magistrate that he was still on the record. Wife's new counsel pointed to this revelation by the magistrate as evidence of a potential conflict of interest in both his objections to the magistrate's decision and the motion to disqualify. And while not specifically pointed to as evidence of bias or of a conflict of interest, Wife's new counsel did note in his objections to the magistrate's decision examples of the magistrate disapproving of Wife's efforts to find a job and of the magistrate forming an opinion of Wife prior to hearing her complete testimony. During the same discussion at the end of the first day of the hearing, the magistrate stated with respect to the issue of whether Wife was entitled to spousal support, "I am not impressed with her. I really am not. I mean, she should have been out beating the bricks getting a job for the last year[.]"

{¶14} Moreover, it is apparent from even a cursory review of the magistrate's decision that credibility played an important role in the magistrate's factual findings. The decision is notable for the number of negative references to Wife's attempts at securing employment and

for the magistrate's propensity for siding with Husband on issues of credibility. While this could point to a reality that Husband's testimony was in fact more credible than Wife's, there was very little in the way of concrete documentary or physical evidence to support one party's testimony over the other. So, the crediting of Husband's testimony could also evidence bias on the part of the magistrate based upon a lengthy and close relationship with Husband's family.

{¶15} With respect to the trial court's concern that the motion was untimely, under the circumstances of this case, and absent additional information, we conclude the trial court abused its discretion in denying the motion on that basis. Certainly, this Court does not encourage litigants who believe that a magistrate may be biased to wait to file a motion to disqualify until after the magistrate has issued an adverse decision. Doing so tends to lead a reviewing court to question the motive behind filing the motion to disqualify. However, in this instance we conclude there could be legitimate reasons why the motion to disqualify was not filed until after the magistrate issued the decision.

{¶16} It is unclear from the record whether Wife's counsel at the hearing ever disclosed to Wife the magistrate's relationship with Husband's parents. Moreover, it is unclear if the magistrate ever brought the issue to the attention of the parties. Accordingly, it is possible that, when Wife retained new counsel in the beginning of November 2013, new counsel was not aware of the potential bias issue either. At that point in time, absent being informed by Wife or Wife's former counsel, new counsel would have no way to know of the potential issue. The transcript of the hearing was not filed until December 9, 2013. Therefore, new counsel might not have discovered the issue until after December 9, 2013. Thus, we cannot say that new counsel's act of filing additional objections and the motion to disqualify on January 8, 2014,

inherently constituted an unreasonable delay or amounted to a forfeiture in light of the particular circumstances of this case.

{¶17} Given the foregoing, we conclude the trial court abused its discretion in failing to hold a hearing to evaluate the merits of the motion to disqualify the magistrate and the reasonableness of the delay in filing the motion. While disqualification may not be ultimately warranted, the record in this case raises numerous questions that are not answered. Absent answers, there is evidence that could lead a reasonable and objective observer to "harbor serious doubts about the [magistrate's] impartiality." *In re Disqualification of Farmer,* 139 Ohio St.3d 1202, 2014-Ohio-2046, at ¶ 7.

{¶18} Wife's first assignment of error is sustained and the matter is remanded for a hearing on her motion to disqualify.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN THE TRIAL COURT USED THE DATE OF SEPARATION AS OPPOSED TO THE STIPULATED TERMINATION DATE OF THE MARRIAGE WHEN CALCULATING THE EQUITY IN THE MARITAL HOME.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DETERMINED LENGTH AND AMOUNT OF SPOUSAL SUPPORT AWARDED TO [WIFE].

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT CALCULATED CHILD SUPPORT, FAILED TO MAKE A CHILD SUPPORT AWARD TO [WIFE] AND NAM[ED] [HER] THE CHILD SUPPORT OBLIGOR.

{¶19} Wife argues in her second assignment of error that the trial court abused its discretion when it used the date of the separation to calculate the equity in the marital home instead of using the stipulated termination date. Wife argues in her third assignment of error

that the trial court erred in determining the amount and length of the spousal support award. In her fourth assignment of error, Wife asserts that the trial court erred in failing to award her child support and in making her the obligor.

**{¶20}** In light of our resolution of Wife's first assignment of error, and the possibility that a new hearing before a new magistrate will be required, we conclude that these remaining assignments of error are not properly before us and we decline to address them at this time.

### III.

**{¶21}** We sustain Wife's first assignment of error and decline to address her remaining assignments of error at this time. The judgment of the Wayne County Court of Common Pleas is reversed and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

⸻

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CARLA MOORE
FOR THE COURT

CARR, J.
CONCURS.

HENSAL, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

**{¶22}** I respectfully dissent from the majority's sustaining of Wife's first assignment of error. However, because reversible error occurred in this case, I concur with the decision to reverse the trial court's judgment.

**{¶23}** As the majority notes, the magistrate disclosed to counsel at the end of the first day of the hearing that he knew Husband's parents. Despite this disclosure, however, Wife did not move to disqualify the magistrate prior to the second day of the trial more than two months later or prior to the magistrate issuing his decision. Under these circumstances, I do not believe that it was unreasonable for the trial court to determine that this issue was not timely raised as it is well established that a party should bring a potential error to the attention of the court at a time it may be corrected rather than waiting to raise the issue after receiving an unfavorable decision. *See, e.g., State v. Zander*, 9th Dist. Summit No. 24706, 2010-Ohio-631, ¶ 75 ("'[A] defendant must bring an alleged error to the attention of the trial court at a time when the error can be corrected' and 'may not sit idly while hoping for a favorable jury verdict and only assert an issue, capable of being remedied at the time of its occurrence, upon receiving an unfavorable jury verdict.'"), quoting *State v. Mills*, 9th Dist. Summit No. 21751, 2004-Ohio-1750, ¶ 6.

{¶24} Nor do I think that a hearing was necessary in light of the arguments raised by Wife in her motion to disqualify the magistrate. Notably, Wife never claimed in her motion to disqualify the magistrate to be unaware of the potential conflict, instead merely asserting that the record is silent as to whether or not she had knowledge of that fact. Absent at least the allegation that Wife was *actually* unaware of the issue, it seems reasonable that the trial court would not hold a hearing, especially given that the magistrate explicitly disclosed the issue to Wife's attorney on the record. While it is possible that Wife's counsel never relayed this information to her, there is no reason to presume that that was the case. [1] Furthermore, even assuming Wife's counsel did not relay this information to her, I do not understand why that would affect the timeliness of her motion. Action or inaction by counsel does not generally reset the timing for dispositive motions, nor does the retention of new counsel. Certainly, given the facts in this case, the trial court could have treated the motion as timely and exercised its discretion accordingly, including holding a hearing on the motion. However, these are discretionary decisions, and I am cognizant that I must defer to the trial court's decision absent an abuse of discretion.

{¶25} Accordingly, I disagree with the majority's conclusion that the trial court committed reversible error when it denied Wife's motion to disqualify the magistrate, and I would overrule Wife's first assignment of error.

{¶26} Nevertheless, I agree that this case should be reversed. The trial court failed to determine whether the parties' checking accounts were marital or separate property and did not

---

[1] It is also possible Wife heard the exchange in the courtroom after the first day of trial. Although the majority interprets the transcript to mean that Wife left after the hearing, the transcript is silent on the issue. The transcript merely reflects that the trial court specifically asked to speak directly to counsel about the settlement negotiations. It is unclear whether this occurred in or outside the presence of the parties.

establish a value for them. "When a trial court fails to classify all of the parties' property as either marital or separate and then fails to value that property in its findings, an appellate court cannot effectively review the accompanying entry." *Goebel v. Weling*, 9th Dist. Summit No. 19385, 1999 WL 548969, *3 (July 28, 1999), quoting *Shuman v. Shuman*, 9th Dist. Summit No. 16836, 1995 WL 149155, *5 (Apr. 5, 1995). This is relevant in this case as the trial court used a different date for valuing the debt on the marital home than it did for the remainder of the marital assets. In order to review the court's decision, we must have a complete picture of the marital assets and their values. Therefore, I would reverse the trial court's decision and remand for it to determine whether the parties' checking accounts were separate or marital property. Accordingly, I concur in the reversal.

APPEARANCES:

NORMAN R. MILLER, JR., Attorney at Law, for Appellant.

ROSANNE K. SHRINER, Attorney at Law, for Appellee.